UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LESLIE H PFEIFER**, and
**LUANNE K PFEIFER**,

Debtors.

Case No. **06-60144-7**

## *MEMORANDUM of DECISION*

At Butte in said District this 28th day of March, 2007.

In this Chapter 7 bankruptcy, after due notice, a hearing was held December 12, 2006, in Billings on the United States Trustee's Motion to Dismiss filed July 24, 2006. The United States Trustee ("UST") was represented at the hearing by attorney Daniel P. McKay, of Great Falls, Montana, and Debtors were represented by their attorney of record, James A. Patten, of Billings, Montana. The Court heard testimony from Lawrence C. Rezentes and each of the Debtors. The UST's Exhibits 1 through 10 and Debtors' Exhibits A through RR were admitted into evidence without objection. Debtors' Exhibits SS and TT were admitted into evidence over the objection of the UST.

The UST moves to dismiss this case under 11 U.S.C. § 707(b)(3) arguing that this case is an abuse of Chapter 7 because "Debtors have the ability to pay a substantial amount of their unsecured debt through a plan under [C]hapter 13 of the Bankruptcy Code." Debtors filed an objection to the UST's motion on August 1, 2006, and noticed the matter for hearing on

September 26, 2006.  As a result of two requests for continuance made by Debtors and one made by the UST, this matter was continued from September 26, 2006, to October 24, 2006, to November 14, 2006, and ultimately to December 12, 2006.  In their response, Debtors concede that their monthly expenses are overstated on Schedule J by $110.00 and further argue that "[a]pplying the definitions of disposable income from the Bankruptcy Code to the facts of this case demonstrates that the Debtors do have the ability to fund a Chapter 13 Plan."  Given Debtors' continued opposition to the UST's motion, it is apparent to the Court that the latter part of the foregoing sentence is a misstatement by Debtors' counsel.  Counsel presumably intended to argue that Debtors do *not* have the ability to fund a Chapter 13 plan.

Debtors also conceded at the hearing and in their post-hearing brief that they double deducted an expense of $66.00 identified by Debtors as "BSH Commerical Liability Policy."  The foregoing overstatement of liability expense is almost offset by Debtors' assertion that they understated their monthly mortgage amount by $61.00.  The above adjustments reduce Debtors' reported monthly expenses, per Schedule J, from $9,653.19 to $9,538.19.  Notwithstanding the above errors, Debtors have not, to date, filed amended Schedules I and J.  Rather, Debtors attached six different versions of amended Schedules I and J to their post-hearing brief, which amended Schedules I and J are identified as Exhibits I through VI.  As explained by Debtors' counsel in Debtors' post-hearing brief:

> Pfeifer has prepared a series of Schedules I and J to reflect income based on the 2005 Big Sky Lighting income ($3,153 per month) and repaying his tax debt over 12 and 24 months, and with the 2006 Big Sky Lighting income ($2,742 per month) and the taxes paid over 12 and 24 months. In addition, Schedule J is corrected to reflect the monthly mortgage payment and the duplicative telephone and insurance payments are eliminated. Finally advance tax deposits for each income level are set out at 25% of the income. Finally, two Schedules I and J

without any tax repayment, but reflecting either the 2005 income or the 2006 income are offered to show what funds are available to fund a Chapter 13 Plan. The attached exhibits are as follows:

| EXHIBIT | DESCRIPTION |
|---|---|
| I | 2005 income; taxes paid over 12 months |
| II | 2005 income; taxes paid over 24 months |
| III | 2006 income; taxes paid over 12 months |
| IV | 2006 income; taxes paid over 24 months |
| V | 2005 income; taxes not paid |
| VI | 2006 income; taxes not paid |

Pfeifer's schedules shows $125,000 in debt, primarily credit card debt. This is consumer debt. Pfeifers concede that over half of their debt is consumer debt and §707(b) is applicable.

Debtors' Exhibits II, IV, V and VI reflect that Debtors would have monthly disposable income ranging from $199.69 to $1,669.44, while Exhibits I and III reflect that Debtors' monthly income would be either a negative $462.56 or a negative $771.31.

This Memorandum of Decision contains the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a), made applicable to the proceeding by Rule 7052, F.R.B.P. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 707. For the reasons discussed herein, the Court finds in favor of the Debtors.

## BACKGROUND

Leslie and Luanne Pfeifer, the Debtors, are married and live in Laurel, Yellowstone County, Montana. Debtors filed their voluntary Chapter 7 bankruptcy petition on March 23, 2006, together with their Schedules, Statement of Financial Affairs, and Form B22A "Statement of Current Monthly Income and Means Test Calculation." Debtors do not list any dependents in their Schedules. Debtor Leslie Pfeifer ("Leslie") is 66 years old and receives social security

benefits. Leslie also receives income from the operation of his sole proprietorship, Big Sky Lighting Company ("BSL"). Debtor Luanne Pfeifer ("Luanne") works as a medical transcriptionist. On the original Schedules I and J filed with their bankruptcy petition, Debtors reported their combined monthly income as $8,001.38 and reported their monthly expenses as $9,653.19.

On the Form B22A filed March 23, 2006, Debtors checked the box on the top of the first page indicating that "The presumption does not arise." Debtors report their combined "total currently monthly income for § 707(b)(7)" as $2,563.87. At Part III "Application of § 707(b)(7) Exclusion", Debtors disclose at Line 15 that their annualized current monthly income of $30,766.44 does not exceed the applicable median family income for a family of two in the amount $43,407 as determined at www.usdoj.gov/ust, for the time period between February 13, 2006, and September 30, 2006, inclusive, during which time Debtors filed this case.

Debtors own the home in which they reside. Debtors also own at least two motor vehicles.

APPLICABLE LAW

The Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA") was signed into law by President George W. Bush on April 20, 2005, and with certain exceptions, is applicable to cases commenced after October 16, 2005.[1] The instant bankruptcy case was commenced on March 23, 2006, and is thus governed by the Bankruptcy Code, as amended by BAPCPA.

---

[1] Unless otherwise indicated, all Code, chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 subsequent to its amendment by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

4

The dismissal or conversion of Chapter 7 bankruptcy cases is governed by 11 U.S.C. § 707(b). The Chapter 7 case of an individual debtor, whose debts are primarily consumer debts, may be dismissed under § 707(b)(1) if a bankruptcy court finds, after notice and hearing, "that the granting of relief would be an abuse of the provisions of" Chapter 7. The determination as to whether "abuse" exists in a given case is determined by applying the objective test found at § 707(b)(2) and/or the subjective test found at § 707(b)(3). The objective test of § 707(b)(2) is commonly referred to as the Means Test. The Means Test of § 707(b)(2) creates a presumption that abuse exists when a debtor's income is greater than the median income for his or her household size in the domiciliary state and his or her income less applicable expenses (as calculated pursuant to uniform standards) is sufficient to pay over a 60 month period at least the lessor of (1) the greater of 25% of the debtor's nonpriority unsecured claims or $6,000.00, or (2) $10,000.00. Explained in another way, the Means Test sets forth the congressionally determined calculations of a debtor's income and expenses, which, depending upon the result obtained from completing the calculations, creates a presumption that the bankruptcy filing is an abuse of Chapter 7 or permits the Chapter 7 case to proceed. The UST does not seek the dismissal of this case under § 707(b)(2).

Instead, the UST argues that this case should be dismissed under § 707(b)(3), which reads:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
>     (A) whether the debtor filed the petition in bad faith; or

> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Unlike the Means Test of § 707(b)(2), § 707(b)(3) prescribes a more subjective test for abuse that is based on the "totality of the circumstances". The Bankruptcy Code, however, does not define the phrase, "totality of the circumstances." Prior to BAPCPA, courts in the Ninth Circuit looked to the "totality of the circumstances" to interpret the term "substantial abuse" in former § 707(b). *Price v. U.S. Trustee (In re Price),* 353 F.3d 1135, 1139-40 (9th Cir. 2004). Because Congress retained the phrase "totality of the circumstances" in BAPCPA, the Court concludes that it may look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3).

Prior to the enactment of BAPCPA, the history of 11 U.S.C. § 707(b) demonstrated that § 707(b) "was intended as the mechanism by which the court or the United States trustee could address general concerns regarding discharge of consumer debt" by debtors. *United States v. Padilla (In re Padilla)*, 222 F.3d 1184, 1194 (9th Cir. 2000). As noted by the Court in *Price*, "Congress added this section to the Code 'in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid their obligations.'" *Price*, 353 F.3d at 1138, *quoting* 6 COLLIER ON BANKRUPTCY ¶ 707.04 at 707-15. Indeed, this Court noted on a prior occasion that 11 U.S.C. § 707(b) was "enacted to impose a restraint on consumer debtors' access to Chapter 7 discharge by interposing bankruptcy courts as gatekeepers who could examine the worthiness of debtor petitions and dismiss those petitions deemed abusive." *In re Stiff*, 17 Mont. B.R. 474, 477 (Bankr. D. Mont. 1999) (quoting *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 3 (1st Cir. 1998)).

In order to prevail under 11 U.S.C. § 707(b), pre-BAPCPA, the UST was required to first show that a debtor's debts were primarily consumer debts, and second, that granting relief under Chapter 7 of the Bankruptcy Code would be a substantial abuse of Chapter 7. 11 U.S.C. § 707(b); *Price,* 353 F.3d at 1138. Because the term "substantial abuse" is not defined in the Bankruptcy Code, the Court in *Price* set forth six nonexclusive criteria for courts to consider when reviewing a case for substantial abuse.[2] *Price,* 353 F.3d at 1139-40. The *Price* Court, however, went on to explain that:

> [t]he primary factor defining substantial abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan. Thus, we have concluded that a "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal."

*Price,* 353 F.3d at 1140, quoting *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988).

Judge Thomas in *Price* further elaborated:

> . . . while "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal," *Kelly,* 841 F.2d at 914, the debtor's ability to pay his or her debts does not *compel* a section 707(b) dismissal of the petition as a matter of law. In addition, as *Kelly* noted, a bankruptcy court could make a finding of substantial abuse under the facts of a particular case even if the debtor did not have the ability to fund a Chapter 13 plan. *Id.* at 914-15. Thus, *Kelly* did not establish an

---

[2] Quoting 3 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 67:5, at 67-10, the Court in *Price* set forth the following six criteria:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
(4) Whether the debtor's proposed family budget is excessive or extravagant;
(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

7

> absolute, *per se* rule. Rather, *Kelly* quite appropriately held that ability to fund a Chapter 13 plan is the most important consideration under § 707(b), and that a finding of ability to pay alone is sufficient to sustain a § 707(b) dismissal.

*Price*, 353 F.3d at 1140. Although the Court concluded that a debtor's ability to fund a plan is the most important consideration under § 707(b), the Court qualified that conclusion by declining to impose a bright line test or *per se* rule that would require the dismissal of a case if the debtor was able to fund a chapter 13 plan and enhancing the application of judicial discretion to determine abuse within the context of § 707(b). *Id.*

While this Court and the Ninth Circuit Court of Appeals previously referred to the totality of the circumstances in making a determination of substantial abuse, in a recent post-BAPCPA decision, one court characterized the Ninth Circuit's holding in *Kelly* as a *per se* rule that was codified by BAPCPA in § 707(b)(2), "with its presumption of abuse for debtors who have the ability to pay based on application of the means test formula." *In re Nockerts*, — B.R. —, 2006 WL 3689465 (Bankr. E.D.Wis. 2006), referencing *In re Ontiveros*, 198 B.R. 284 (C.D.Ill. 1996). The court in *Nockerts* cautioned that:

> [W]hile ability to pay is a factor in the totality of circumstances test, and may even be the primary factor to be considered, if it is the only indicia of abuse, the case should not be dismissed under that test. Given the detailed nature of the means test in § 707(b)(2), this Court holds that similar to the old totality of the circumstances test, more than an ability to pay (as shown on the debtor's Schedule I and J) must be shown to demonstrate abuse under § 707(b)(3)(B).

*Id.* Judge Kelley in *Nockerts* concedes that a debtor's ability to fund a Chapter 13 plan could be a factor considered by the courts under § 707(b)(3) if the case involved below-median income debtors or if the debtors had, in some way, manipulated the means test.

This Court appreciates Judge Kelley's cautionary statement in *Nockerts*. However, a

8

debtor's ability to pay is still an important factor under § 707(b)(3), notwithstanding the means test of § 707(b)(2). *In re Sorrell*, — B.R. —, 2007 WL 211276 (Bankr. D.Ohio 2007) ("the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted"), and *In re Pak*, 343 B.R. 239 (Bankr. N.D.Cal. 2006) ("It would be counterintuitive to construe [§ 707(b)(3)'s use of the phrase 'the totality of the circumstances'], as used in BAPCPA, to exclude a consideration of the debtor's ability to pay."). The Court considers the discussion in *Price* to dispel any belief that a bright line test or a *per se* rule exists in the Ninth Circuit.

## DISCUSSION

Turning to the case *sub judice*, Debtors concede that their debts are primarily consumer debts. Accordingly, the UST need only show, under the totality of the circumstances, that Debtors' financial situation demonstrates abuse of the Bankruptcy Code. The UST's sole argument with respect to dismissal of this case is that Debtors have the ability to pay a substantial amount of their unsecured debt through a Chapter 13 plan. After reviewing the facts and applicable law, the Court is not convinced that Debtors could make any meaningful payment to their creditors under Chapter 13 of the Bankruptcy Code.

Although this case was filed as a Chapter 7 bankruptcy, the UST's argument requires the Court to examine Chapter 13 of the Bankruptcy Code. BAPCPA substantially modified the disposable income test of § 1325(b) in the following manner: (1) disposable income [current monthly income] is determined by the debtor's average monthly income received within the six-month period ending on the last day of the calendar month immediately preceding the date of the

commencement of bankruptcy petition (*see* §§ 1325(b)(2) and 101(10A)); (2) for debtors with income above the applicable state's median income, amounts reasonably necessary to be expended are determined as the debtor's applicable monthly expense amounts specified under the IRS National and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses for the area in which the debtor resides on the date of filing (*see* §§ 1325(b)(3) and 707(b)(2)(A) and (B)); and (3) projected disposable income, multiplied by the applicable commitment period is the amount to be paid to unsecured creditors, § 1325(b)(4).

Congress defined the term "current monthly income" ("CMI"), as set forth in § 1325(b)(2) at § 101(10A) as the average monthly income from all sources, with some exceptions, that the debtor receives during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of debtor's bankruptcy case. CMI excludes Social Security benefits or payments to victims of war crimes, of crimes against humanity or terrorism, and in the context of a chapter 13 bankruptcy (*see* § 101(10A)(B)), also excludes alimony, child support, foster care, and child disability payments (§ 1325(b)(2)). CMI is calculated by having all debtors complete lines 1-23 of Form B22C, with the result being listed on line 21 as the debtor's "[a]nnualized current monthly income for § 1325(b)(3)." The term "disposable income" is defined at § 1325(b)(2) and is determined differently depending on whether the debtor's income is above or below the applicable median family income as determined by the debtor's place of residence and household size. If a debtor's annualized current monthly income, as set forth on Line 21 of Form B22C, is greater than the applicable state's median income for a household of the same size, reasonably necessary expenses are

10

calculated using the "Means Test" of § 707(b)(2)(A) and (B). However, if a debtor's annualized current monthly income is less than the state's applicable median income, the debtor is finished with Form B22C and proceeds to list income and expenses on Schedules I and J.

The UST contends that Debtors have understated their business income and have understated Luanne's monthly income. The Court agrees. Debtors' Exhibit TT provides a monthly overview of BSL's business operations for 2005 and for January 2006 through November 2006. The UST asserts on Exhibit 10 that Debtors' business income from BSL is $3,077.13 per month. The UST's number is substantially similar to the Court's own calculation of $3,033.03.[3] Given the fact that the UST's calculation is substantially similar to the Court's own calculation, the Court will use the UST's calculation of BSL's monthly income of $3,077.13 for purposes of this Memorandum of Decision. Similarly, the UST asserts, and Debtors do not dispute, that Luanne's monthly gross income is $2,132.65, as opposed to the amount of $1,896.37 set forth on Debtors' Schedule I. If the foregoing amounts were plugged into the Form B22C utilized in Chapter 13 cases, Debtors' annualized CMI from § 1325(b)(4) would be $62,517.36. Because Debtors' annualized CMI exceeds the median family income for a household size of two located in Montana, Debtors' applicable commitment period would be five years and Debtors' reasonably necessary expenses would be calculated using the "Means Test" of § 707(b)(2)(A) and (B), rather than Schedules I and J.

Under § 707(b)(2)(A) and (B), Debtors are entitled to: a standard national deduction of

---

[3] Using Debtors' Exhibits I through N, the Court determined the deposits made into BSL's bank account. From the forgoing monthly deposits, the Court deducted amounts spent by BSL as reflected in Exhibits DD through II, excluding transfers to Leslie, and concluded that the revenues generated by BSL for the applicable six month period totaled $18,198.17. The foregoing figure divided by 6 equals $3,033.03.

11

$904.00 for food, clothing, household supplies, personal care, and miscellaneous; a standard local deduction of $287.00 for housing and utilities; and standard local deductions totaling $1,035.38 for the operation and ownership expenses associated with Debtors' two vehicles.[4] In addition to the above allowed expenses, Debtors would, per the UST's Exhibit 10, be entitled to a deduction of $238.26 for Luanne's payroll taxes. Debtors would also be subject to taxes on the income of BSL. If Debtors were taxed at a marginal tax rate of 25%, their monthly tax obligation on BSL's monthly income would be $769.29. In addition to the foregoing, per Exhibit 10, the UST does not dispute that Luanne is entitled to a payroll deduction of $94.81 for retirement contributions. On Form B22C, Debtors could also deduct an additional $312.00 on line 36 for other necessary health care expenses.[5] Therefore, Debtors' total expenses allowed under the Internal Revenue Service's ("IRS") standards is $3,640.74. The foregoing amount would be reflected on line 38 of Form B22C.

In addition to the above deduction of $3,640.74, Debtors would also be entitled to the additional expenses set forth in Subpart B of Part IV of Form B22C. Specifically, Debtors could claim a health insurance expense of $107.00 and a health savings account expense of $129.00, for a total additional expense deduction on line 46 of Form B22C of $236.00.

Finally, on Form B22C, Debtors would also be entitled to various deductions for debt payment. The Court does not have the required information to calculate the exact amounts that

---

[4] Debtors could claim on line 27 a deduction for the operation of two vehicles of $420.00. Debtors could also claim a deduction of $283.38 on line 28 for the ownership cost of their first vehicle ($471.00 less $187.62) and $332.00 on line 29 for the ownership cost of a second vehicle. *See In re Naslund*, ___ B.R. ____, 2006 WL 4038608 (Bankr. D. Mont. 2006)

[5] The figure of $312.00 is listed as an expense by Debtors on their Schedule J and is also listed as an expense by the UST on Exhibit 10.

would appear on line 47 for Debtors' repayment of their mortgage and auto loan, but for purposes of this Order, the Court has used Debtors' actual monthly mortgage expense of $882.00 and has divided the total amount due on Debtors' auto loan of $11,257.00 by sixty to obtain an approximate 60-month average payment on Debtors' automobile of $187.62. In addition to the above debt payment, both the IRS and the Montana Department of Revenue have filed proofs of claim, asserting priority claims in the sum of $15,028.63 and $1,823.00, respectively. The foregoing amounts paid over a period of 60 months would equate to a monthly payment of $280.86. Finally, the Court, for purposes of this Order only, would allow Debtors a deduction of $18.00 per month for Chapter 13 administrative expenses. Consequently, Debtors could deduct an additional $1,368.48 on line 51 of Form B22C and per line 52 of Form B22C, the total of all deductions allowed under § 707(b)(2) would equal $5,245.22.

   Utilizing the above numbers, this Court estimates that Debtors' monthly disposable income under § 1325(b)(2) would be roughly a negative $35.44. The Court's foregoing conclusion is directly contrary to the UST's assertion that Debtors have the ability to pay a substantial amount of their unsecured debt through a Chapter 13 plan. The UST has thus not satisfied the first *Price* factor. Furthermore, the UST has made no showing that Debtors' family budget is excessive or extravagant and the UST has not shown that Debtors engaged in eve-of-bankruptcy purchases. Moreover, it is unclear from the record whether Debtors' substantial credit card purchases are related to personal purchases, medical expenses or business expenses. Leslie is experiencing problems with his back that limits his ability to conduct his business at BSL. Debtors have also experienced a recent downturn in business at BSL. It is unclear whether that downturn is attributable to Leslie's back problems, age or some other factor. The Court

would agree that Debtors' Schedules I and J do not portray an accurate picture of Debtors' financial picture. However, after examining the totality of the circumstances, this Court concludes that Debtors' instant bankruptcy does not violate the letter or spirit of the Bankruptcy Code.

The Court is cognizant of the fact that Debtors' case would look dramatically different if the Court's analysis focused on Debtors' Schedules I and J. Under an analysis of Debtors' Schedules I and J, Debtors could easily make a plan payment well in excess of $500.00 per month. However, the UST persuasively argued that Debtors' income was not accurately reflected on Schedule I. The increase in Debtors' income to above-median changed the analysis in this particular case. This case is a clear illustration that BAPCPA may not be achieving the results desired by BAPCPA proponents. Accordingly, for the reasons discussed herein, the Court finds that the UST has failed to show that this case should be dismissed under § 707(b)(3).

IT IS THEREFORE ORDERED that the Court will enter a separate order in favor of the Debtors, Leslie and Luanne Pfeifer, and against the United States Trustee, denying the United States Trustee's Motion to Dismiss filed July 24, 2006.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana